# In the United States Court of Federal Claims

No. 22-578C

(Filed:  January 12, 2023)

*************************************
| | |
|---|---|
| GROUNDBREAKER DEVELOPMENT CORPORATION, | * * * |
| Plaintiff, | * * |
| v. | * * * |
| THE UNITED STATES, | * * |
| Defendant. | * |

RCFC 12(b)(1); Motion to Dismiss for Lack of Subject-Matter Jurisdiction; Failure to Submit Monetary Claims to Contracting Officer Before Initiating Suit; Standing of Corporation to Bring Suit

*************************************

<u>David Hilton Wise</u>, Fairfax, VA, for plaintiff.

<u>Nathanael B. Yale</u>, United States Department of Justice, Washington, DC, for defendant.

## **OPINION AND ORDER**

**SWEENEY**, Senior Judge

The United States Army Corps of Engineers ("Corps") terminated its contract with plaintiff Groundbreaker Development Corporation ("Groundbreaker") for default. Groundbreaker challenges the default termination, seeks conversion of the termination into one for the convenience of the government, and asserts claims for breach of contract and equitable adjustment of the contract price.  Defendant moves to dismiss all of these claims for lack of standing.  In addition, defendant moves to dismiss the latter two claims for lack of subject-matter jurisdiction.  Groundbreaker opposes the motion but also seeks leave to amend its complaint to cure any perceived defects in its pleading.  For the reasons set forth below, the court grants defendant's motion in part, grants Groundbreaker's request to amend its complaint to address the standing issue, and denies Groundbreaker's request to amend its complaint regarding the breach-of-contract and equitable adjustment claims.

## **I.  BACKGROUND**

Groundbreaker and the Corps entered into their contract on April 20, 2020, pursuant to which Groundbreaker would install a water line at Northfield Brook Lake in Thomaston, Connecticut.  Compl. ¶¶ 10, 16.  On February 17, 2021, the Corps issued a show cause notice alerting Groundbreaker that a termination for default was being contemplated.  Compl. Ex. 5 at 1.  The Corps then issued a notice of termination for default on May 26, 2021.  Compl. Ex. 9.

Groundbreaker appealed that decision to this court on May 26, 2022, relying on the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101-7109, to establish jurisdiction for its claims.  Compl. ¶ 5.  In Count I of the complaint, which is titled "Wrongful Termination," Groundbreaker contends that the Corps' termination for default was improper, and states that it "is entitled to all rights and damages, including settlement expenses, for the wrongful termination for default [as] if the termination had been issued for the convenience of the Government."  Id. ¶¶ 115-116.

In Count II of the complaint, which is titled "Violation of Statutory and Regulatory Mandate to Make Payments," the court discerns two distinct claims.[1]  The first claim is for breach of contract due to the nonpayment of monies allegedly owed for work performed on the contract, in the amount of $63,952.65.  See id. ¶ 118 ("As part of its obligations under the Contract, the Government is required to pay [Groundbreaker] for all work performed on the Project . . . ."); see also id. ¶¶ 61-65 (alleging that Groundbreaker submitted an invoice to the Corps for completed contract work for $63,952.65, which remains unpaid).  The court refers to this claim as the "nonpayment claim."

The second claim in Count II is for compensation for additional work performed by Groundbreaker due to alleged constructive changes to the contract, in the amount of $30,000.  See id. ¶ 118 (requesting an equitable adjustment of the contract price flowing from constructive changes to the contract); see also id. ¶¶ 75-92 (presenting allegations under the rubric "Constructive Changes to the Contract" and contending that "[t]he value of this extra work exceeds $30,000"); id. at 18 (seeking relief in the total amount of $93,952 for "an equitable adjustment and damages").  The court refers to this claim as the "equitable adjustment claim."

Defendant moves to dismiss all of Groundbreaker's claims on the basis that Groundbreaker is a terminated corporation under the laws of Virginia where it was incorporated and thus lacks standing to bring this suit.  Further, defendant moves to dismiss Groundbreaker's nonpayment and equitable adjustment claims on the additional ground that these claims were not presented to the contracting officer ("CO") for the Corps.  In opposition, Groundbreaker contends that its standing is not based on its original incorporation in Virginia, but on its de facto corporation status in Connecticut.  In addition, Groundbreaker argues that because the nonpayment and equitable adjustment claims are based on the same facts as its default termination claim, it did not need to submit its own claims to the CO.  Groundbreaker further requests that it be allowed to amend its complaint to cure defects identified by defendant where amendment is deemed "appropriate" by the court.  Pl.'s Opp'n 13-14.  Defendant's motion to dismiss has been fully briefed and the court deems oral argument to be unnecessary.

---

[1] Defendant identified two distinct claims in Count II of the complaint and Groundbreaker has not proposed a different characterization of Count II.  See Def.'s Mot. 12-13 (citing Compl. ¶¶ 55-67, 75-83, 117-124).

## II. STANDARDS OF REVIEW

Defendant brings its motion to dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), which pertains to the court's subject-matter jurisdiction. In determining whether subject-matter jurisdiction exists, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Faced with a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving, by a preponderance of evidence, that the court possesses subject-matter jurisdiction. Id. If jurisdictional facts are challenged, the court is not limited to the pleadings in determining whether it possesses subject-matter jurisdiction to entertain the plaintiff's claims. Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014); Pucciariello v. United States, 116 Fed. Cl. 390, 400 (2014). If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. See Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."). To survive an RCFC 12(b)(6) motion to dismiss, a plaintiff must include in its complaint "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). In other words, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Although the court must "accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56), legal conclusions in the complaint are not presumed to be true, Iqbal, 556 U.S. at 678. Under RCFC 12(b)(6), "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982).

## III. ANALYSIS

### A. Subject-Matter Jurisdiction

The Tucker Act, pursuant to 28 U.S.C. § 1491(a)(2), confers upon the United States Court of Federal Claims ("Court of Federal Claims") jurisdiction to entertain claims arising under the CDA. For such jurisdiction to exist, a contractor must first submit a timely written claim, generally within six years of its accrual date, to the CO. See 41 U.S.C. § 7103(a)(1)-(2), (4)(A). This jurisdictional prerequisite is often referred to as the CDA's presentment requirement. See, e.g., Arctic Slope Native Ass'n v. Sebelius, 583 F.3d 785, 793 (Fed. Cir. 2009) (stating that under the CDA "the presentment of claims to a contracting officer . . . is a prerequisite to suit in the Court of Federal Claims"). Next, the CO must issue a timely written

decision.  41 U.S.C. § 7103(a)(3), (f).  Lastly, the contractor must file an appeal with this court "within 12 months from the date of receipt of a contracting officer's decision."  Id. § 7104(b)(3).

### 1. Presentment Requirement for a Contractor's Monetary Claims in the Circumstances of a Termination for Default

When a contractor has been terminated for default, it is not excused from the presentment requirement for monetary claims it may wish to litigate before this court.  See, e.g., Fed. Contracting, Inc. v. United States, 128 Fed. Cl. 788, 795-96 (2016) (holding that a default termination could not be construed to be a final decision on the contractor's breach-of-contract claims because those claims had not been presented to the CO).  This rule, applied in the context of default terminations, follows the more general rule that the court cannot consider CDA claims that were not the subject of a CO's final decision.  See, e.g., England v. Swanson Grp., Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004) ("[J]urisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim."); see also M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1331 (Fed. Cir. 2010) ("The statutory language of the CDA is explicit in requiring a contractor to make a valid claim to the contracting officer prior to litigating that claim.").

There is a long line of decisions from this court holding that a defaulted contractor may not file suit for monetary relief under the CDA if the contractor has not first obtained the CO's final decision on the contractor's own CDA claims.  See, e.g., Fed. Contracting, Inc., 128 Fed. Cl. at 795-96; Hanover Ins. Co. v. United States, 116 Fed. Cl. 303, 308 (2014); Fort Howard Senior Hous. Assocs., LLC v. United States, No. 10-553C, 2012 WL 12866783, at *3 (Fed. Cl. Sept. 11, 2012); Armour of Am. v. United States, 69 Fed. Cl. 587, 591-93 (2006); DePonte Invs., Inc. v. United States, 54 Fed. Cl. 112, 115-16 (2002); Witherington Constr. Corp. v. United States, 45 Fed. Cl. 208, 212 (1999); Cincinnati Elecs. Corp. v. United States, 32 Fed. Cl. 496, 505 (1994).  Moreover, the precedent of the United States Court of Appeals for the Federal Circuit ("Federal Circuit") supports this line of decisions.

In a seminal case, the Federal Circuit distinguished between a CO's final decision ordering a default termination and a separate monetary claim asserted by the government for the return of progress payments not earned by the contractor.  Sharman Co. v. United States, 2 F.3d 1564, 1570 (Fed. Cir. 1993) (citing Crippen & Graen Corp. v. United States, 18 Cl. Ct. 237, 240-41 (1989)), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995).  It held that because the presentment requirement was not met for the government's monetary claim, the trial court should not have ruled on it:

> A final decision from the contracting officer on the government's monetary claim, the basis of the trial court's judgment, was a prerequisite to jurisdiction over this claim in the Claims Court.  Because this claim was effectively put in litigation by [the contractor's] original complaint and because the contracting officer had not issued a final decision as to either the government claim or the contractor's mirror image claim before the original suit was filed, the Claims Court did not have jurisdiction over either claim.

Id. at 1573. It further held that the CO's final decision terminating the contract for default was separate and distinct from the parties' monetary claims that arose from the circumstances surrounding the default termination. Id. at 1570.

The Federal Circuit also addressed the trial court's dismissal of the contractor's monetary claim for termination-for-convenience costs.[2] Consistent with its holding regarding the government's monetary claim for the return of progress payments, it considered the contractor's claim for termination-for-convenience costs to be distinct from the contractor's nonmonetary challenge to the default termination and to be jurisdictionally barred by the CDA's presentment requirement. See id. at 1573 ("[B]ecause there had been no final decision by the contracting officer on the contractor's claim for convenience termination costs, the Claims Court correctly dismissed it for lack of jurisdiction."). Simply put, a default termination does not open this court's doors to a defaulted contractor's monetary claims unless those claims have first been presented to the CO. See, e.g., Hanover Ins. Co., 116 Fed. Cl. at 309 ("In the absence of a final contracting officer decision regarding termination for convenience costs or other money damages related to the default termination, whether premised on a contractor claim or on a government claim, the court must dismiss the [plaintiffs'] claims for money damages . . . .").

### 2. Groundbreaker's Nonmonetary Wrongful Termination Claim in Count I Satisfies the CDA's Presentment Requirement

In contrast, this court may consider a defaulted contractor's nonmonetary challenge to a default termination even when the contractor has presented no such claim to the CO. See Securiforce Int'l Am., LLC v. United States, 879 F.3d 1354, 1363 (Fed. Cir. 2018) (finding no jurisdictional impediment to a contractor's claim that it was improperly defaulted because "a termination for default is a government claim not subject to CO presentment under the CDA"); Sharman Co., 2 F.3d at 1572 (holding that this court had "jurisdiction to address the contractor's independent challenge to the default termination" even though the contractor did not submit such a claim to the CO before asserting it in this court). Thus, although Groundbreaker never submitted its own claim to the CO challenging the default termination, there is no dispute that the Corps' termination of Groundbreaker's contract "constitutes a final decision on a Government claim, and therefore [Groundbreaker did] not need to first submit a claim to the Government contesting that termination prior to bringing suit in this Court." Def.'s Reply 9 (citing Securiforce Int'l Am., LLC, 879 F.3d at 1363). Consequently, the portion of Count I of the complaint that sets forth Groundbreaker's timely, nonmonetary challenge to the default termination, asserting that it was wrongful and that it should be converted into a termination for the convenience of the government, satisfies the CDA's jurisdictional prerequisites.

### 3. Groundbreaker's Claim for Termination-for-Convenience Costs in Count I Does Not Satisfy the CDA's Presentment Requirement

In the other portion of Count I of the complaint, Groundbreaker specifically requests termination-for-convenience costs. See Compl. ¶ 116 (citing Federal Acquisition Regulation

---

[2] The contractor did not appeal the trial court's dismissal of its claim for termination-for-convenience costs. Sharman Co., 2 F.3d at 1566 & n.2.

52.249-10(c)) (asserting that Groundbreaker "is entitled to all rights and damages, including settlement expenses, for the wrongful termination for default [as] if the termination had been issued for the convenience of the Government"). Although defendant did not seek dismissal of Count I on the grounds that it includes a monetary claim that had not been presented to the CO, "[a] court may and should raise the question of its jurisdiction sua sponte at any time it appears in doubt." Arctic Corner, Inc. v. United States, 845 F.2d 999, 1000 (Fed. Cir. 1988).

As discussed in Section III.A.1, supra, a defaulted contractor must present its monetary claims to the CO before filing suit. Groundbreaker makes no factual allegation that it submitted a claim for termination-for-convenience costs or, indeed, any monetary claims to the CO before it filed suit. In fact, its only representation on this topic is that a submission to the CO of the monetary claims asserted in Count II was not required. Following Sharman Co. and the decisions of this court referenced in Section III.A.1, Groundbreaker's monetary claim for termination-for-convenience costs in Count I of the complaint must be dismissed for lack of subject-matter jurisdiction.

### 4. Groundbreaker's Nonpayment and Equitable Adjustment Claims in Count II Do Not Satisfy the CDA's Presentment Requirement

In addition to its request for termination-for-convenience costs, Groundbreaker asserts monetary claims based on nonpayment and equitable adjustment theories of recovery. Because these claims were not first presented to the CO before filing suit, they must be dismissed.

Groundbreaker relies on two decisions to argue that the claims set forth in Count II of its complaint are properly before the court. First, Groundbreaker argues that in Seneca Sawmill Co. v. United States, 161 Fed. Cl. 619 (2022), the court "held that it did have jurisdiction under the Contract Disputes Act even though the claim asserted [in the complaint] was based on a different legal theory than the certified claim submitted to the contracting officer." Pl.'s Opp'n 12. The holding in Seneca Sawmill Co. has no application here. Because Groundbreaker never submitted a claim to the contracting officer, there is no opportunity for the court to compare the operative facts in any such claim to the claims asserted in Count II of the complaint to determine whether the presentment requirement has been met. Cf. Seneca Sawmill Co., 161 Fed. Cl. at 632-33 (holding that because the claim presented to the CO depended on the same operative facts as the claim set forth in the complaint, the court had jurisdiction over the claim under the CDA).

Groundbreaker's reliance on Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003), is similarly misplaced. The timber company plaintiff first filed certified claims with the CO, which were denied, and then filed complaints in this court that were consolidated into one case. Id. at 1362. The CDA's presentment requirement was satisfied because the claims in the plaintiff's complaints were "essentially the same" as those presented to the CO, even though "slightly different legal theories" were presented to this court. Id. at 1366. But here Groundbreaker never filed a claim with the CO, so the holding in Scott Timber Co. has no applicability to the jurisdictional inquiry required in this case.

This court must instead follow Sharman Co. and the long line of decisions issued by this court dismissing the monetary claims of defaulted contractors if those claims were not first

presented to a CO. Accordingly, because Groundbreaker did not seek a final decision from the CO on the monetary claims asserted in Count II before filing suit, it failed to meet the CDA's jurisdictional presentment requirement for those claims. See, e.g., Fed. Contracting, Inc., 128 Fed. Cl. at 796 (dismissing breach-of-contract claims because the defaulted contractor's letters to the CO contesting the termination did not "assert a claim for damages for breach of contract in a sum certain" and thus failed to satisfy the CDA's presentment requirement). The nonpayment and equitable adjustment claims asserted in Count II of the complaint must be dismissed for lack of subject-matter jurisdiction.[3]

## B. Standing

### 1. Standard of Review for Standing Challenges Brought Under RCFC 12(b)(1)

Even if the court possessed subject-matter jurisdiction over all of Groundbreaker's claims, defendant contends that Groundbreaker, a terminated corporation under the laws of Virginia, lacks standing to assert them. In short, the question presented by defendant's motion is whether Groundbreaker has "standing to maintain an action in federal court." Spokeo, Inc. v. Robins, 578 U.S. 330, 333 (2016). The Federal Circuit has described the standing requirement for claims brought in this court:

> "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., [475 U.S. 534, 541 (1986)]. In keeping with this principle, the doctrine of standing "serv[es] to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, [495 U.S. 149, 155 (1990)]. The [Court of Federal Claims], "though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) (citation omitted). The plaintiff bears the burden of showing standing, and because standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, [504 U.S. 555, 561 (1992)].

Starr Int'l Co. v. United States, 856 F.3d 953, 964 (Fed. Cir. 2017) (second alteration in original). In Warth v. Seldin, 422 U.S. 490 (1975), the Supreme Court of the United States explains the Article III standing requirement:

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the

---

[3] Groundbreaker's request that it be allowed to amend its complaint, after filing a certified claim with the CO seeking a final decision on the nonpayment and equitable adjustment claims, is addressed in Section III.C, infra.

> defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action . . . ."

Id. at 498-99 (footnotes and citations omitted). To have Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc., 578 U.S. at 338.

The Federal Circuit has provided specific instructions for this court's resolution of a motion to dismiss for lack of standing brought under RCFC 12(b)(1) when that motion is a facial challenge to the allegations in the complaint:

> [W]e join the majority of our sister circuits in holding that the Supreme Court's "plausibility" requirement for facial challenges to claims under Rule 12(b)(6), as set out in . . . Twombly . . . and . . . Iqbal . . . , also applies to facial challenges to subject-matter jurisdiction under Rule 12(b)(1). Thus, "[t]o survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter" that would plausibly establish standing if accepted as true. Iqbal, [556 U.S. at 678] (citing Twombly, [550 U.S. at 570]). "Threadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice." Id.

Crow Creek Sioux Tribe v. United States, 900 F.3d 1350, 1354-55 (Fed. Cir. 2018) (second, third, and sixth alterations in original) (footnote omitted). The Federal Circuit also stated, in this context, that the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Id. at 1354 (quoting Warth, 422 U.S. at 501).

Thus, a facial challenge to the complaint brought under RCFC 12(b)(1), when standing is the focus of the motion, requires an application of the plausibility standard used to decide RCFC 12(b)(6) motions. See id. at 1354-55; see also Columbus Reg'l Hosp. v. United States, 990 F.3d 1330, 1342 n.5 (Fed. Cir. 2021) (describing the standing inquiry in Crow Creek Sioux Tribe as addressing both a "facial jurisdictional flaw in the complaint" and a "failure to allege an injury in fact sufficient to establish standing"); Constructora Guzman, S.A. v. United States, 161 Fed. Cl. 686, 692-93 (2022) (citing Crow Creek Sioux Tribe and holding that the plaintiff established standing when it plausibly alleged that it was a third-party beneficiary of a contract with the United States).

There is less explicit guidance from the Federal Circuit as to the procedure for resolving a factual challenge to a plaintiff's Article III standing to maintain a suit in this court. When considering an RCFC 12(b)(1) motion that contests jurisdictional facts, the general rule is that this court may weigh evidence to resolve the challenge. See Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint . . . ."). And the Federal Circuit, albeit while applying precedent of the United States Court of Appeals for the Ninth Circuit, has held that a trial court may examine jurisdictional evidence to determine whether the plaintiff has "suffered any legally cognizable wrong," an element of ripeness. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993). The doctrine of ripeness is akin to that of standing in that both are considered to be questions of justiciability. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 n.8 (2007) (stating that the "justiciability problem" before the Court could be viewed two different ways, but that "standing and ripeness boil down to the same question in this case"); Warth, 422 U.S. at 499 n.10 ("The standing question thus bears close affinity to questions of ripeness . . . and of mootness . . . ."); Fisher v. United States, 402 F.3d 1167, 1176 (Fed. Cir. 2005) (panel portion) (noting that justiciability "encompasses a number of doctrines under which courts will decline to hear and decide a cause," including the "doctrines of standing, mootness, ripeness, and political question"). Based on the reasoning expressed in Cedars-Sinai Medical Center, there appears to be no reason to exclude a standing challenge from the general rule that an RCFC 12(b)(1) motion that challenges jurisdictional facts may be resolved by weighing the evidence submitted by the parties.

The Federal Circuit has further held, albeit while applying precedent of the United States Court of Appeals for the Fifth Circuit, that factual challenges to Article III standing brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"), can be resolved by the weighing of evidence.[4] Mitek Sys., Inc. v. United Servs. Auto. Ass'n, 34 F.4th 1334, 1341 (Fed. Cir. 2022). In a footnote accompanying its standing analysis, it commented that the "Fifth Circuit's approach reflects the generally recognized facial/factual distinction in the treatment of jurisdictional challenges," and cited Cedars-Sinai Medical Center, 11 F.3d at 1583-84, in support of that approach. Mitek Sys., Inc., 34 F.4th at 1341 n.2. It further held that a "court should first determine which Rule 12(b)(1) framework to apply" to the standing issue, which depends on "whether the Rule 12(b)(1) motion is being treated as presenting a facial or a factual challenge." Id. at 1344, 1346. The Federal Circuit vacated the district court's dismissal for lack of jurisdiction and remanded for further proceedings because, at least in part, the district court had not clearly articulated the framework for its standing analysis. Id. at 1344, 1349.

Precedent from other courts of appeals shows that factual challenges to a plaintiff's standing generally require the trial court to weigh evidence and to dismiss the case for lack of jurisdiction when the plaintiff fails to meet its burden. See, e.g., Flynn v. FCA US LLC, 39 F.4th 946, 951-52, 954 (7th Cir. 2022) (affirming a dismissal for lack of subject-matter jurisdiction because "[i]n response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific evidence to satisfy each of the elements necessary to

---

[4] RCFC 12(b)(1) and FRCP 12(b)(1) "are substantially the same for these purposes." Crow Creek Sioux Tribe, 900 F.3d at 1355 n.2.

establish his standing to sue"); Friends of the Earth v. Sanderson Farms, Inc., 992 F.3d 939, 944-45 (9th Cir. 2021) (affirming the trial court's resolution of factual disputes because the defendant's Rule 12(b)(1) motion presented a factual challenge to the plaintiffs' standing); Yeransian v. B. Riley FBR, Inc., 984 F.3d 633, 637 (8th Cir. 2021) ("In reviewing a Rule 12(b)(1) dismissal [for lack of standing] based on a factual attack on the opposing party's claims, we review the district court's factual findings for clear error . . . ."); Baker v. USD 229 Blue Valley, 979 F.3d 866, 872 (10th Cir. 2020) (stating that a Rule 12(b)(1) motion mounting a factual attack on Article III standing permits the trial court to weigh evidence); Katz v. Donna Karan Co., 872 F.3d 114, 119-21 (2d Cir. 2017) (affirming the trial court's dismissal for lack of subject-matter jurisdiction because its weighing of evidence to grant a Rule 12(b)(1) factual challenge to the plaintiff's standing was proper); Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017) (stating that a trial court may examine evidence to resolve a factual challenge to standing); Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (stating that a factual challenge to standing allows the court to weigh facts and does not require the court to presume that the allegations in the complaint are true); Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc., 778 F.3d 502, 504 (5th Cir. 2015) (stating that the plaintiff opposing a factual standing challenge must prevail by a preponderance of the evidence to establish the court's subject-matter jurisdiction over the suit); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1336 (11th Cir. 2013) (holding that for a factual challenge to standing, the court may consider extrinsic evidence, may weigh facts, and is "'not constrained to view [facts] in the light most favorable' to the plaintiff" (quoting Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009))). Based on these authorities, this court may resolve a factual challenge to Article III standing by weighing evidence. Accord Anaheim Gardens v. United States, 159 Fed. Cl. 201, 207 (2022) (denying an RCFC 12(b)(1) factual challenge to the standing of a partnership, after weighing the evidence submitted by the parties, because the partnership had a legal existence at the time it filed suit and thus had Article III standing); see also id. at 205 ("[A] plaintiff corporation or partnership must have legal existence to have constitutional standing." (quoting Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 386 (2d Cir. 2021))).

### 2. Groundbreaker Has Not Established Standing

Standing must be determined "as of the commencement of suit," Rothe Dev. Corp. v. Dep't of Def., 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quoting Lujan, 504 U.S. at 570 n.5), which in this case is May 26, 2022. Groundbreaker alleges in its complaint that it "is a corporation authorized to do business in Connecticut." Compl. ¶ 6. In its motion to dismiss, defendant raises a factual challenge to Groundbreaker's standing, presenting evidence that Groundbreaker's corporate status in Virginia, where it had been incorporated, was terminated before it filed suit in this court. Groundbreaker presented no contrary evidence and conceded that it did not have corporate status in Virginia. Pl.'s Opp'n 9 (stating that "the Virginia Groundbreaker corporation was dissolved in 2015"). Groundbreaker argues, however, that it has standing because of its status as a de facto corporation in Connecticut. It presents a declaration from its owner and documentary evidence in support of its argument.

Defendant, in its reply brief, renews its challenge to Groundbreaker's standing, stating that the additional allegations of fact presented in Groundbreaker's opposition brief, along with

the supporting declaration and documents attached thereto, fail to show that Groundbreaker "took the steps necessary to invoke the [de facto corporation] doctrine." Def.'s Reply 4-5. Defendant suggests that, in Connecticut, a business entity must have made a "good faith effort to organize under the law" to qualify as a de facto corporation. Id. at 4 (quoting Int'l Sport Divers Ass'n v. Marine Midland Bank, N.A., 25 F. Supp. 2d 101, 107 (E.D.N.Y. 1998)). This characteristic of Connecticut de facto corporations has been recited in at least one other decision. See Enviro Props. Corp. v. Armco, Inc., No. CV990266176S, 2001 WL 306874, at *2 (Conn. Super. Ct. Mar. 16, 2001) (concluding that the plaintiff was not a de facto corporation and lacked capacity to sue because, at least in part, the plaintiff had not made "a good faith attempt to incorporate under the law"). The court agrees with defendant that Groundbreaker, in its opposition brief, has not shown by preponderant evidence that it made a good faith effort to incorporate in Connecticut and was thus a de facto corporation under Connecticut law at the time it filed suit in this court. Dismissal of this suit for lack of standing is therefore justified. However, Groundbreaker requests that it be allowed "to amend the Complaint to allege the existence of Groundbreaker operating as a de facto corporation," and further suggests that discovery would aid in the resolution of the issues raised in defendant's RCFC 12(b)(1) motion. Pl.'s Opp'n 13-14.

### 3. Amendment of the Complaint to Add Factual Allegations of De Facto Corporation Status

This court "should freely give leave [to amend a complaint] when justice so requires." RCFC 15(a)(2); accord Te-Moak Bands of W. Shoshone Indians of Nev. v. United States, 948 F.2d 1258, 1260 (Fed. Cir. 1991) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). The court may deny leave to amend a complaint for "undue delay, bad faith, dilatory motive, failure to correct deficiencies which could have been cured earlier and undue prejudice to the non-amending party by allowance of the amendment." Te-Moak Bands of W. Shoshone Indians of Nev., 948 F.2d at 1260-61. The court may also deny leave to amend a complaint if the proposed amendment would be futile. Foman, 371 U.S. at 182. "An amendment is futile if it would not survive a motion to dismiss." Turner v. United States, 160 Fed. Cl. 242, 246-47 (2022) (citing Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1354-55 (Fed. Cir. 2006)). The court considers Groundbreaker's request to amend its complaint to add allegations of de facto corporation status in accord with these principles.

As an initial matter, defendant has not alleged that it would suffer prejudice, never mind undue prejudice, if Groundbreaker amends its complaint to assert that it has standing as a Connecticut de facto corporation. Second, it would be unjust to dismiss Groundbreaker's nonmonetary challenge to the default termination because any new suit asserting this claim would be time-barred. See Guardian Angels Med. Serv. Dogs, Inc. v. United States, 809 F.3d 1244, 1248 (Fed. Cir. 2016) (noting that a defaulted contractor only has twelve months to challenge the default because "the linchpin for the start of the statutory appeal period is a final decision by a contracting officer terminating a contract for cause"). Indeed, defendant's only argument against Groundbreaker's amendment of the complaint to plead de facto corporation status is that the proposed amendment would be futile. Def.'s Reply 12 (citing Foman, 371 U.S. at 182).

Defendant argues that "even if Groundbreaker had pleaded the same factual allegations that it asserted in the declaration accompanying its opposition, Groundbreaker would still not have pleaded sufficient facts to establish that it had standing to sue as a de facto corporation under Connecticut law." Id. at 4. Notably, defendant's challenge to Groundbreaker's hypothetical amended complaint is a facial challenge because defendant contends that such a pleading would be insufficient for standing purposes. See Crow Creek Sioux Tribe, 900 F.3d at 1354 (stating the standard of review for a facial challenge to a plaintiff's standing and affirming a dismissal because the plaintiff "failed to sufficiently allege injury"); Ins. Co. of the W. v. United States, 100 Fed. Cl. 58, 63 (2011) (stating that a facial challenge to a complaint brought under RCFC 12(b)(1) asserts that the "plaintiff's allegations are insufficient to establish jurisdiction" (citing Cedars-Sinai Med. Ctr., 11 F.3d at 1583)). Consequently, the court would be required to assume all factual allegations in the amended complaint to be true and consider whether there is sufficient factual matter therein to establish standing. Crow Creek Sioux Tribe, 900 F.3d at 1354-55.

Given this standard, there are two problems with defendant's contention as to the futility of amendment. First, it is unclear whether Groundbreaker's amended complaint would reproduce, without alteration, the factual allegations raised by Groundbreaker in its opposition brief. Second, even if Groundbreaker's amended complaint contained essentially the same allegations of fact as the ones presented in its opposition brief, it is unclear that a challenge to Groundbreaker's standing as a de facto corporation in Connecticut would succeed under the standard of review for facial challenges. See Warth, 422 U.S. at 501 ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

The issue of whether Groundbreaker made a good faith effort to incorporate in Connecticut would be more properly addressed in a factual, not facial, challenge to Groundbreaker's standing, because the determination of good faith is likely to require an examination of evidence outside of the pleadings. See, e.g., Cedars-Sinai Med. Ctr., 11 F.3d at 1584 (stating that for an inquiry into "predicate jurisdictional facts" the court "may review evidence extrinsic to the pleadings, including affidavits and deposition testimony"); see also Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996) (stating that where a party is "denying or controverting necessary jurisdictional allegations . . . the court may consider evidence outside the pleadings to resolve the issue" (citations omitted)). The full extent of the parties' evidence addressing any good faith attempt to incorporate in Connecticut is not currently before the court. Thus, the outcome of a factual challenge to Groundbreaker's standing, if Groundbreaker amends its complaint, cannot be predicted with any certainty at this time.

In sum, although Groundbreaker's contention that it has standing to challenge the default termination of the contract may not survive a motion to dismiss or a motion for summary judgment, defendant has not established that it would be futile for Groundbreaker to amend its complaint to include de facto corporation status allegations. Groundbreaker may amend its complaint for this purpose.

As a final note on standing, the court does not agree with Groundbreaker that defendant is estopped from raising a challenge to Groundbreaker's alleged status as a de facto corporation. A similar defense was raised, and rejected, in Enviro Properties Corp. See 2001 WL 306874, at *2-3. And although estoppel was applied under Connecticut law in the decisions referenced by Groundbreaker, it was to estop the plaintiffs in those cases from reaching assets of individual shareholders of de facto corporations. See DiFrancesco v. Kennedy, 160 A. 72, 75 (Conn. 1932); Clark-Franklin-Kingston Press, Inc. v. Romano, 529 A.2d 240, 243-44 (Conn. App. Ct. 1987). No such attack on individual shareholders is part of this litigation. Further, the court has found no authority, and Groundbreaker has offered none, suggesting that the United States may be estopped from challenging the Article III standing of a plaintiff in this court. See Pandrol USA, LP v. Airboss Ry. Prods., Inc., 320 F.3d 1354, 1367 (Fed. Cir. 2003) ("It is well-established that any party, and even the court sua sponte, can raise the issue of standing for the first time at any stage of the litigation, including on appeal." (citing Nat'l Org. of Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994); FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230 (1990))); Witherington Constr. Corp., 45 Fed. Cl. at 212 n.6 (stating that "jurisdiction may not be established via estoppel"). Groundbreaker's estoppel argument is unpersuasive and defendant may challenge Groundbreaker's standing if an amended complaint is filed.

### C. Amendment of the Complaint to Include Presentment of Count II Claims

Although Groundbreaker may amend its complaint to address Article III standing, the court denies Groundbreaker's request for leave to further amend the complaint regarding the nonpayment and equitable adjustment claims asserted in Count II. Groundbreaker seeks "leave to file a certified claim for Cou[n]t II and thereafter amend the Complaint to reflect this administrative act of filing a claim that will no doubt be denied by [the] Government given its termination for default of the Contract." Pl.'s Opp'n 13-14. As defendant notes, the nonpayment and equitable adjustment claims, once dismissed by this court, may be submitted by Groundbreaker to the CO, but the CDA's jurisdictional prerequisite will not be met until the CO either issues a final decision or is deemed to have denied those claims. Def.'s Reply 12-13; see also Def.'s Mot. 14 n.7 (indicating that the six-year limitations period for submitting such claims may not have run). The court does not favor delaying this litigation for an indefinite period to allow amendment of the complaint at an unknown date. Accord Foman, 371 U.S. at 182 (stating that "undue delay" is a reason to deny amendment of a complaint); RCFC 1 (stating that the rules of this court "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action").

It is more efficient for the court to dismiss Groundbreaker's nonpayment and equitable adjustment claims, without prejudice, so that Groundbreaker may submit these claims to the CO if it chooses to do so. Thereafter, Groundbreaker will have the option to appeal any CO decision on those claims. See Hanover Ins. Co., 116 Fed. Cl. at 310 (dismissing claims for termination-for-convenience costs without prejudice and noting that such a ruling permitted the plaintiffs to subsequently pursue those claims by submitting them to the CO). The court therefore denies Groundbreaker's request that it be allowed to amend its complaint in regard to its nonpayment and equitable adjustment claims.

## IV.  CONCLUSION

The court has considered all of the parties' arguments.  To the extent not discussed herein, the court finds them unpersuasive or without merit.  Consistent with the reasoning set forth above:

- The court **GRANTS IN PART** defendant's motion to dismiss.  The monetary claim in Count I and the claims in Count II of the complaint are **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

- The court **DEFERS** ruling on the portion of defendant's motion to dismiss that challenges Groundbreaker's standing to bring the nonmonetary wrongful termination claim found in Count I of its complaint.

- The court **GRANTS** Groundbreaker's request to amend its complaint to allege that it was a de facto corporation in Connecticut at the time it filed its complaint but **DENIES** Groundbreaker's request that it be allowed to amend its complaint in regard to its nonpayment and equitable adjustment claims.  Groundbreaker shall **FILE** an amended complaint, if any, **by no later than Friday, February 17, 2023**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge